**VIRGINIA:   IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH**

**CHRISTINE ANDERSON,**

   **Plaintiff**

**v.**         **Case No.:** CL 16- 5382

**REEDS JEWELERS, INC,**
**a North Carolina corporation,**

   **Defendant**

**Serve: CT Corporation System, Registered Agent**
  **4701 Cox Road, Suite 285**
  **Glen Allen, Virginia 23060-0000**

## COMPLAINT

   COMES NOW the Plaintiff, Christine Anderson, and demands judgment against the Defendant, Reeds Jewelers, Inc. upon grounds stated more fully herein:

   1.  The Plaintiff, Christine Anderson (hereinafter "Plaintiff" or "Anderson"), is a natural person and a resident of the City of Virginia Beach, Virginia.

   2.  The Defendant, Reeds Jewelers, Inc. (hereinafter "Defendant" or "Reeds") is a North Carolina corporation with its principal office located in Wilmington, North Carolina.

   3.  Defendant formerly maintains stores throughout the Commonwealth of Virginia, including but not limited to the City of Virginia Beach, Virginia.

   4.  Defendant is a U.S. retail jewelry company that sells diamonds and precious gems, fine jewelry and brand-name watches, including Rolex watches.

   5.  Plaintiff began working for Defendant on or about October 9, 2006 as a Sales Associate. Eventually, Anderson's excellent work and admirable ethics earned her a promotion to Assistant Store Manager at Defendant's Store 91, located at 701 Lynnhaven Parkway, space 1048 ("Lynnhaven Store") in Virginia Beach, Virginia.



EXHIBIT

A

6.      Defendant terminated Anderson's employment on April 18, 2015. Prior to being fired, Plaintiff consistently earned high marks on annual reviews and as a result continually received pay increases. In fact, in or about October 2014 Defendant offered Anderson a promotion in the way of managing Reed's Patrick Henry Mall location in Newport News, Virginia. Just six months later Defendant told Anderson she was being fired because wasn't following "company policy" by using multiple lenders – even though no other employee had been terminated for this reason, nor was there such a written policy at the time of the firing.

7.      In truth, Anderson was fired because she had spent the past several months trying to end a scheme wherein Reeds was taking advantage of young military individuals and reaping large profits as a result.  In addition, Reeds was also defrauding current business partners (*i.e.*, lending institutions) and devaluing the brand value of one of its most important suppliers (*i.e.*, Rolex).  Anderson tried diligently to stop this conduct until she was fired and offered up as a scapegoat when Reed's business partner's started asking questions.

*The Scheme*

8.      In or about October 2014, Anderson noticed a small group of individuals (*i.e.*, "handlers") repeatedly visiting the Lynnhaven Store.  This group of individuals would continually bring along young individuals serving in the military (*i.e.*, "buyers").  These young military men and women would then request credit from Reeds' lending partners (via assistance from Reeds' employees) to purchase jewelry – usually Rolex watches.

9.      Anderson eventually learned that after borrowing and purchasing the jewelry, the buyers would then sell the jewelry to the handlers for cash – typically for a fraction of the amount actually financed.

10. Having learned this, Anderson began to try and talk new buyers out of taking loans to purchase jewelry – telling them that failure to make regular payments could lead to military discipline.

11. In addition, Anderson repeatedly informed Reed's management about this scheme and the potential harm being perpetrated on young military personnel. Anderson contacted Reed's Loss Prevention Manager, Justin Ward on October 17, 2014, at 2:03 p.m. and shared an email with links to websites showing the sale of watches obtained through this scheme. Reed's management did nothing to investigate Anderson's concerns. Rather, Reeds continued to see inflated sales of high end jewelry through this scheme and as a result, directly profited by their participation in this fraud upon their lending partners.

12. In January 2015, Anderson further informed Reed's Head of Inventory Control, Peaches Bosley, of the scheme. Anderson specifically told Bosely, "I don't feel comfortable continuing to assist with the financing of these particular buyers." Further, Anderson specifically told Bosely that she was concerned about "transshipping" issues – especially with regard to Reed's Rolex license. Reed's is one of a select few businesses licensed to sell Rolexes in the Hampton Roads area. Nonetheless, Reeds repeatedly ignored Anderson's pleas to address this scheme.

13. Anderson eventually learned that the handlers were coaching the buyers to lie on the jewelry financing documents regarding their military pay rank – further increasing the amount of potential financing.

14. Finally, in or about February 2015, Pioneer (a financial lender focused on serving military service members) began investigating the recent increase in loan defaults involving Reeds stores in the Hampton Roads area. In late March, Ward visited Anderson at the Lynnhaven Store location and claimed ignorance of Anderson's prior pleas for help regarding the scheme.

15.     Shortly thereafter, Reeds fired Anderson. At the time of firing and since then, Reeds representatives have continually disparaged Anderson's character and continually alleged that Anderson is being or will be investigated by law enforcement agencies (*e.g.,* the Naval Criminal Investigative Service (NCIS) and Federal Bureau of Investigation (FBI)).

### *The Fallout*

16.     As a licensed Rolex dealer, Reeds has certain specific contractual obligations, including but not limited to:

    a.     To sell Rolex products in a manner consistent with the high standards, goodwill and prestigious reputation of the Rolex name;

    b.     To sell Rolex products only to ultimate consumers, in transactions that originate over-the-counter at its authorized locations. (All other methods of the sale are considered transshipping – any transshipping of Rolex watches, even if unintentional, is prohibited);

    c.     To refrain from any conduct that weakens, compromises or adversely affects Rolex trademarks;

    d.      To comply with any applicable federal, state or local law or regulations;

    e.     To avoid any involvement in any activity that could damage Rolex's reputation or that is generally considered immoral, illegal, or contrary to public notice.

17.     Reeds breached these obligations by failing to investigate and address the scheme Anderson discovered.

18. By selling massive amounts of Rolex product via this scheme, Reeds flooded the marketplace with newly sold Rolex watches (with freshly activated, but not yet used warranty cards); this conduct allowed unlicensed dealers to then sell Rolex watches under the guise that they were in fact not-used but new.

19. Further, Reed's improper conduct has allowed Reeds to move forward with an extensive remodeling of its Lynnhaven Store boasting a "Rolex Boutique". Upon completion of this in-store "Rolex Boutique", Reeds will have a distinct advantage (*e.g.*, offering a larger-than-average selection of Rolex watches) over its few competitors in the Hampton Roads area.

### Count I—Wrongful Discharge in Violation of Public Policy

20. Plaintiff respectfully incorporates by reference Paragraphs One through Eighteen as if set out in full herein.

21. Virginia common law recognizes wrongful discharge claims in violation of public policy, *inter alia*, when the discharge was based on the employee's refusal to engage in a criminal act.

22. Defendant had knowledge of Plaintiff's objection to continuing to participate in the scheme.

23. Defendant had knowledge and/or the reasonable belief that Plaintiff would not engage in, aid or otherwise abet criminal fraudulent activities, and/or that Plaintiff may record and/or maintain evidence of such criminal activities.

24. Defendant wrongfully discharged Plaintiff in violation of the public policy of the Commonwealth due to her refusal to continue engage in criminal acts. Defendant's scheme violated the following Va. Code Sections:

    a.    18.2-178 – Obtaining money or signature, etc., by false pretense;

    b.     18.2-186 – False statements to obtain property or credit;

    c.     18.2-195 –     Credit card fraud; conspiracy; penalties; (iv) 18.2-195.2 – Fraudulent application for credit card;

    d.     18.2-197 – Criminally receiving goods and services fraudulently obtained;

    e.     18.2-216 – Untrue, deceptive or misleading advertising, inducements, writings or documents;

    f.     18.2-217 – Advertising merchandise, etc., for sale with intent not to sell at price or terms advertised; and

    g.     18.2-246.3 – Money laundering.

25.    Specifically, in firing Anderson Defendant violated the public policy of Va. Code Section 18.2-178, which makes it a felony for any person to "obtain, by false pretense or token, from any person, with intent to defraud, money . . . or other property that may be the subject of larceny . . ." when Reed's employees assisted buyer's with obtaining financing through fraudulent means.

26.    In wrongfully discharging Plaintiff in violation of public policy, Defendant acted with malice or with reckless disregard for Plaintiff's rights.

27.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

### Count II—Tortious Interference with Prospective Business Relations

28.    Plaintiff respectfully incorporates by reference Paragraphs One through Twenty-Five as if set out in full herein.

29.     Defendant knew or had reason to know that the business community in which Plaintiff operates (*i.e.*, the jewelry sales community) is tightly knit and that any damage to reputation or credibility to a member of the community would have severe consequences with regard to that member's actual and prospective business relationships.   Defendant further had knowledge of Plaintiff's valid business relationship with her new employer (a jeweler within Virginia Beach) and Plaintiff's valid expectancy of remaining a well-respected member of the local jewelry sales community.

30.     Defendant negligently, recklessly and/or intentionally defamed and maligned Plaintiff's reputation within the community.  On multiple occasions since firing Anderson, Reed's representatives have alleged to others within the community that Anderson was fired for participating in a fraudulent scheme and could face criminal prosecution by the NCIS and FBI.

31.     Defendant put Plaintiff in a bad and false light knowing it would adversely affect her career in the jewelry industry.  Defendants have repeatedly told others in the industry that Anderson was fired for participating in unethical activities.

32.     Defendant disseminated (and continue to do so) false and defamatory information to the public and within the Jewelry community in North Carolina and Virginia about Anderson in an attempt to induce these individuals to avoid business relationships with her.

33.     Defendant's ongoing acts of tortious interference constitute transgressions of a continuing nature, for which Plaintiff has been damaged.

34.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

## Count III—Common-Law Conspiracy

35.     Plaintiff respectfully incorporates by reference Paragraphs One through Thirty-Two as if set out in full herein.

36.     Defendant engaged in a tacit agreement with the above-mention "handlers" and conspired with these handlers to: (i) tortuously defraud Defendant's business partners (*i.e.*, the above-mentioned financial lending institutions) by assisting young military personnel in obtaining loans in which the recipients had no intent and/or ability to repay; (ii) breach contractual and fiduciary duties owed to Defendant's supplier, Rolex, by, including but not limited to, diluting Rolex's brand and assisting in allowing non-licensed distributors to send Rolex watches; and (iii) firing Anderson, and in so doing, violating (*inter alia*) the public policy mandate of Va. Code Section 18.2-178 by insisting that Plaintiff participate in the above-referenced scheme.

37.     In subjecting Plaintiff to common-law conspiracy, Defendants acted with malice or with reckless disregard for Plaintiff's rights.

38.     In acting under this tacit agreement with the above-mentioned handlers, Defendant conspired to accomplish a criminal and or unlawful purpose – defrauding its business partners. Moreover, in acting under this tacit agreement, Defendant conspired to accomplish other legal ends (*i.e.*, sale of merchandise) through unlawful means – defrauding its business partners.

39.     Through the conspiracies described above and through covert acts they committed in furtherance of those conspiracies, Defendants directly and proximately caused Plaintiff to suffer loss of income and other economic benefits, job search costs and the loss of future employment opportunities, diminished professional status, diminished job opportunities, mental anguish, and emotional distress.

40.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

WHEREFORE, the Plaintiff, Christine Anderson, by counsel, prays that this honorable Court grant her judgment against the Defendant, Reeds Jewelers, Inc., in the amount of $950,000.00, plus costs, attorneys' fees, pre- and post-judgment interest and such other relief as may be deemed just and proper, whether at common law or by applicable statute including, but not limited to, his litigation fees and costs.

**TRIAL BY JURY DEMANDED**

Respectfully submitted,

**CHRISTINE ANDERSON,**

By: _____
Todd M. Gaynor, Esquire (VSB No. 47742)
GAYNOR LAW CENTER, P.C.
440 Monticello Ave., Suite 1825A
Norfolk, Virginia 23510
PH: (757) 955-8455
FX: (757) 319-4089 facsimile
EM: tgaynor@gaynorlawcenter.com

*Counsel for Plaintiff*