IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CHRISTINE ANDERSON,**

**Plaintiff,**

v.

CIVIL ACTION NO. 2:16cv739

**REEDS JEWELERS, INC.,**

**Defendant.**

MEMORANDUM ORDER & OPINION

Before this Court is Reeds Jewelers, Inc.'s ("Defendant") Motion to Dismiss. Defendant filed a Memorandum in Support of its motion, and Plaintiff filed a Response. Defendant also filed a Reply Brief, and moved for a hearing. The Court held a hearing on May 10, 2017. At the hearing Defendant moved, with Plaintiff's consent, for the dismissal of Count Two, which the Court granted. For the reasons discussed below, Defendant's Motion to Dismiss on Counts One and Three is **DENIED**.

## I. FACTUAL & PROCEDURAL HISTORY

On December 2, 2016, Plaintiff filed a three count Complaint against Defendant in the Circuit Court of the City of Virginia Beach, Virginia. Count One alleged that Defendant wrongfully discharged Plaintiff for her refusal to engage in a criminal act in violation of public policy. Compl. ¶ 21. Count Two[1] alleged Defendant tortiously interfered with Plaintiff's prospective business relations by "negligently, recklessly and/or intentionally defam[ing] and malign[ing] Plaintiff's reputation within the community." *Id.* at 30. Count Three alleges Defendant insisted that Plaintiff engage in a common law conspiracy with "handlers," which violates, inter alia, the public policy mandate of the Va. Code Section 18.2-178. *Id.* at 36.

---

[1] Plaintiff voluntarily dismissed this charge.

1

Defendant removed this action to this Court on diversity jurisdiction grounds on December 27, 2016. ECF No. 1 at 1-2. That same day, Defendant moved to Dismiss Counts One, Two, and Three of Plaintiff's Complaint pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 4. Plaintiff filed a response, and voluntarily dismissed Count Two of the Complaint, on January 11, 2017. ECF No. 7. Defendant filed a reply on January 17, 2017, ECF No. 8, and moved for a hearing on its Motion to Dismiss on February 24, 2017. ECF No. 9.

As a matter of background, Defendant employed Plaintiff as a sales associate on or about October 9, 2006. Compl. ¶ 5. Throughout the eight years that Plaintiff was employed with Defendant, Plaintiff received high marks, pay increases, was promoted to Assistant Store Manager, and was offered a Store Manager position. *Id.* at ¶ 5-6. Six months after Defendant offered Plaintiff the store manager position at Defendant's Patrick Henry Mall location, Plaintiff was terminated for using multiple lenders and for failure to follow "company policy." *Id.* at ¶ 6. Plaintiff asserts that no other employee had been terminated for this reason and that the company did not have such a policy at the time that Plaintiff was fired. *Id.*

Plaintiff specifically argues that Defendant was engaged in a "scheme" that brought young military personnel ("buyer") into Defendant's Virginia Beach store to request credit from Defendant's lending partners to purchase jewelry—mainly Rolex watches. *Id.* at ¶ 8. After the buyer received lender financing with the assistance of Defendant's employees, and subsequently purchased the jewelry, the buyer typically sold the jewelry to "handlers" for a fraction of the amount actually financed. *Id.* at ¶ 9.

Upon learning of the "scheme," Plaintiff discouraged new buyers from using lender financing to purchase jewelry—telling them that failure to make regular payments could lead to military discipline. *Id.* at ¶ 10. Plaintiff also informed Justin Ward, Defendant's Loss

2

Prevention Manager, on October 17, 2014, about the scheme and its potential harm on buyers. *Id.* at ¶ 11. Defendant did nothing to investigate this scheme, and Plaintiff continued to see inflated sales of high end jewelry as the result of this scheme. *Id.*

Plaintiff told Peaches Bosley, Defendant's Head of Inventory Control, "I don't feel comfortable continuing to assist with the financing of these particular buyers [,]" in January of 2015. *Id.* at ¶ 12. Plaintiff also informed Bosley that she was concerned about "transshipping" issues—especially regarding Defendant's Rolex license.[2] *Id.* Defendant continued to ignore Plaintiff's allegations. *Id.*

Plaintiff further learned that "handlers" were "coaching" buyers to lie about their military pay rank on their jewelry financing documents to increase their amount of potential financing. *Id.* at ¶ 13. Pioneer, a financial lender that primarily serves military service members began investigating the increases in loan defaults at Defendant's Hampton Road stores in or about February 2015. *Id.* at ¶ 14. Ward, Defendant's Loss Prevention Manager, visited Plaintiff at Defendant's Lynnhaven store location and denied that Plaintiff informed him of the scheme. *Id.*

Shortly thereafter, Defendant fired Plaintiff, and continuously "disparaged" [Plaintiff's] character and "alleged that [Plaintiff] is being or will be investigated by law enforcement agencies. . . and [the] Federal Bureau of Investigation. . ." *Id.* at ¶ 15.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th

---

[2] Defendant is one of the few businesses licensed to sell Rolex watches in the Hampton Roads area. Compl. ¶ 12.

Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court will only grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir. 1969).

Although a complaint need not contain detailed factual allegations, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). If the factual allegations do not nudge the Plaintiff's claims "across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570.

### III. DISCUSSION

### A. COUNT ONE: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

Plaintiff charges, *inter alia*, that Defendant wrongfully discharged her in violation of the public policy of the Commonwealth of Virginia due to her refusal to continue to engage in a series of criminal acts. Compl. ¶ 24. Defendant asserts that Count I should be dismissed because Plaintiff failed to plead that Defendant asked Plaintiff to engage in the alleged unlawful acts under the threat of discharge, or that she was discharged because of her alleged refusal to engage in a criminal act. *Id.*

The Commonwealth of Virginia is an employment-at-will state. *See Miller v. SEVAMP, Inc.*, 234 Va. 462, 465 (Va. 1987) (affirming state circuit court decision that no cause of action for retaliatory discharge exists in employment-at-will situation where appellant employee was discharged because she was a witness for co-worker at a grievance hearing). As such, when an

employment contract in Virginia does not provide for the duration of the employment relationship expressly or by fair inference, either party ordinarily is free to terminate the relationship for any reason or for no reason at all, provided that it gives the other party reasonable notice. *See id.* (citing *Bowman v. State Bank of Keysville*, 229 Va. 534, 535 (Va. 1985)). That rule, however, "is not absolute." *Bowman v. State Bank of Keysville*, 229 Va. 534, 539 (Va. 1985). Courts in at least 20 states, including Virginia, have granted exceptions to the strict application of this doctrine in favor of at-will employees who claim to have been discharged in violation of an established public policy. *Id.* at 539.

Because all Virginia statutes generally express some degree of public policy, the Supreme Court of Virginia further restricted the *Bowman* exception. *See Virginia Beach v. Harris*, 259 Va. 220 (Va. 2000). The Supreme Court of Virginia clarified that two types of statutes may give rise to a viable wrongful discharge claim on public policy grounds: (1) statutes involving laws containing explicit statements of public policy (e.g. "It is the public policy of the Commonwealth of Virginia [that] ...") *Harris*, 259 Va. at 232 (citing *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. 98, 105 (Va. 1994)); and (2) statutes that implicitly express an established state public policy, "designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general[,]" that the discharge violates. *Anderson*, 92 F. Supp. 2d at 521 (citing *Harris*, 259 Va. at 232; *Lockhart v. Commonwealth Educ. Sys. Corp.*, 247 Va. at 98, 104 (Va. 1994)). Additionally, an employee must also be "a member of the class of individuals the public policy is intended to benefit." *Anderson*, 92 F. Supp.2d at 522 (citing *Harris*, 259 Va. at 233).

Here, Plaintiff asserts that Defendant's scheme violated eight Virginia Codes: VA. CODE ANN. § 18.2-178 (1981)—obtaining money or signature, etc., by false pretenses; VA. CODE ANN.

§ 18.2-186 (2007) —false statements to obtain property or credit; VA. CODE ANN. § 18.2-195 (1991)—Credit card fraud, conspiracy, and penalties; VA. CODE ANN. § 18.2-195.2 (2007)—Fraudulent application for credit card; VA. CODE ANN. § 18.2-197 (1981)—criminally receiving goods and services fraudulently obtained; VA. CODE ANN. § 18.2-216 (2014)—Untrue, deceptive, or misleading advertising, inducements, writings or documents; VA. CODE ANN. § 18.2-217 (1975)—advertising merchandise, etc., for sale with intent not to sell at price or terms advertised; and VA. CODE ANN. § 18.2-246.3 (1999)—money laundering.

As a matter of common law, none of the aforementioned statutes may serve as the basis of a *Bowman* claim under the first category because they each fail to explicitly state that they are expressing a public policy of the Commonwealth of Virginia. *See Harris*, 259 Va. at 232. Alternatively, they each may serve as the basis of a *Bowman* claim under the second category because they are all designed to protect a person from being discharged for engaging in a criminal act. *See Robinson v. Salvation Army*, 292 Va. 666, 670 (Va. 2016) ("One such exception specifically recognized in *Bowman* is that an at-will employee who is discharged based on a refusal to engage in a criminal act may have a valid cause of action for wrongful discharge.").

But, as expressed above, the analysis does not end here. The Court must also determine whether Plaintiff falls within the class of individuals the eight statutes are designed to benefit or protect. *See Anderson*, 92 F. Supp. 2d at 521. While it is obvious that protected classes would fall under the at-will termination exception, "a statute's protective reach may extend beyond the class of persons who are victims of its violation." *Id.*

Plaintiff in this case claims to have been wrongfully discharged, in violation of the public policy of the Commonwealth for her refusal to continue to engage in criminal acts. Compl. ¶ 24.

"[A] statute's protective reach may extend beyond the class of persons who are victims of its violation." *Anderson*, 92 F. Supp. at 521. "Indeed, a statute's protective reach may extend to those who have a legal duty under that statute." *Id.* (citing *Dray v. New Market Poultry Prod., Inc.*, 258 Va. 187 (Va. 2000). Stated differently, "an employee does not have to be the victim of the crime he or she is asked to commit to fall within the statute's protective reach." *Anderson*, 92 F. Supp. at 523 (citing *Mitchem v. Counts*, 259 Va. 179 (Va. 2000) (abrogated by *Robinson v. Salvation Army*, 292 Va. 666 (Va. 2016) and *Dray v. New Market Poultry Prod., Inc.*, 258 Va. 187 (Va. 2000)). In such instances, "it is sufficient that the statute imposes upon the employee a duty not to engage in the conduct ordered by the employer." *Id.*

Here, all eight statutes Plaintiff cited plainly prohibited Plaintiff from committing the aforementioned crimes. As a result, Plaintiff falls within the protective reach of each of those statutes, and has stated a valid *Bowman* wrongful discharge claim where Plaintiff alleges that her employer fired her for refusing to engage in statutorily prohibited conduct. *See* Anderson, 92 F. Supp. at 523; *See also Robinson*, 292 Va. at 670.

For these reasons, Count I states a valid *Bowman* claim for wrongful discharge in violation of Virginia public policy, and Defendant's Motion to Dismiss on Count I is **DENIED**.

## B. COUNT THREE: COMMON LAW CONSPIRACY

Plaintiff charges that Defendant engaged in a tacit agreement with a group of "handlers" to: "(i) tortuously [sic] defraud Defendant's business partners . . . ; (ii) breach contractual and fiduciary duties owed to Defendant's supplier, Rolex . . .; and (iii) firing [Plaintiff], and . . . violating (*inter alia*) the public policy mandate of Va. Code Section 18.2-178 by insisting that Plaintiff participate in the above-referenced scheme." Compl. ¶ 36. Defendant asserts that Plaintiff failed to plead sufficient facts to support a claim for civil conspiracy because Plaintiff

7

failed to state claims for termination in violation of public policy. ECF No. 5 at 10. Defendant further asserts that Plaintiff fails to meet the particularity requirement under Federal Rule of Civil Procedure 9(b) because the Complaint refers to Defendant and some unidentified "handlers." ECF No. 5 at 11. Defendant also notes that Plaintiff has failed to plead sufficient facts that show how this allegedly unlawful scheme resulted in Plaintiff's injury. ECF No. 8 at 5.

To state a claim for common law conspiracy under Virginia law, a plaintiff must show "1) an agreement between two or more persons; 2) to participate in an unlawful act, or a lawful act in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and 4) that the overt act was done pursuant to and in furtherance of the common scheme." *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. Oct. 9, 2009) (citing *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 337 (Va. 1985)). "[A]n allegation of conspiracy, whether criminal or civil, must at least allege an unlawful act or an unlawful purpose." *Skillstorm, Inc.*, 666 F. Supp. 2d at 618 (quoting *Hechler Chevrolet*, 230 Va. at 402). Thus, "to survive a motion to dismiss, an allegation of conspiracy must include either an unlawful act or an unlawful purpose." *Skillstorm, Inc.*, 666 F. Supp. 2d at 618 (quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003)).

Here, Plaintiff alleges that Defendants conspired with Plaintiff and an unidentified group of "handlers" to execute the alleged conspiracy. While Federal Rule of Civil Procedure 9(b) requires parties alleging fraud or mistake to state the circumstances pertaining to the fraud or mistake with particularity, the standard for common law conspiracy under Virginia law is quite different. As noted above, to survive a motion to dismiss for common law conspiracy, a Plaintiff must simply allege that Defendant was engaged in a conspiracy that included either an unlawful

8

act or an unlawful purpose. Here, Plaintiff alleges that there was an agreement between two or more people to commit an unlawful act—namely the eight alleged statutory violations expressed in Count I. *See* Compl. ¶ 35-38. Additionally, Plaintiff cites a number of injuries that were caused by the conspiracy, *Id.* at 39-40, and further alleges that the overt acts were done pursuant to and in furtherance of a common scheme. *Id.* at 8-15, and 35-38.

It is important to note, however, that the vast majority of Plaintiff's Complaint also alleges that Defendant was engaged in fraudulent behavior. To the extent that Plaintiff alleges fraud, Plaintiff must plead such facts with specificity, including the "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Feely v. Total Realty Mgmt*, 660 F. Supp. 2d 700, 712 (E.D. Va. Aug. 28, 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir.1999); FED. R. CIV. P. 9(b)); *see also Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F.Supp.2d 571, 579 (E.D.Va.2006) (" 'Rule 9(b) requires; that allegations of fraud be pled with specificity [and] [g]rouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why and how, be pled with specificity.' ").

For the foregoing reason, Defendant's Motion to Dismiss on Count III is **DENIED**.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss on Counts I and III are **DENIED**. Count II was dismissed for the reasons stated on the record.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
May 11, 2017

/s/
Raymond A. Jackson
United States District Judge

9